# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, )</br>)</br>Plaintiff, )</br>)</br>vs. )</br>)</br>BRITT EDWARD KINZALOW, )</br>a/k/a BRITT EDWARD KINAZLOW, )</br>a/k/a BRITT EDWARD KINZLOW, )</br>)</br>Defendant. ) | Case No. CR-05-122-F |

## ORDER

As is more fully set forth at the foot of this order, the court desires further briefing addressed to the legal conclusions which should flow from the facts which the court finds to exist, on the basis of the evidence presented at the suppression hearing which was held on September 28, 2005.

_____

The evidence at the hearing consisted of the testimony of four officers with the Oklahoma City Police Department, all of whom testified credibly. The defendant, Britt Edward Kinzalow, was arrested on June 1, 2005, at 2944 S.W. 15th Street in Oklahoma City. This was not the defendant's residence. At this address was the residence (one side of a duplex) of a Ms. Soto (who was not otherwise identified at the hearing).

Officers with the Oklahoma City Police Department went to this location at 2944 S.W. 15th Street for the purpose of executing an arrest warrant for Miron Moaning. Miron Moaning was a suspect in a drive-by shooting.

Three officers came to the location in question for purposes of the arrest of Miron Moaning. Those three officers were Robert Coniglione, Eldon Walsh and Dustin White. The first two officers through the door were Officers Coniglione and Walsh. Officer White stayed behind in the front yard to watch for any individuals who might try to escape.

When the officers entered the duplex, Mr. Kinzalow was sitting in the front room. The arrest of Mr. Miron Moaning was quickly effected by one of the first two officers through the door. Officer White followed the other two officers into the residence momentarily after the first two officers entered. After Miron Moaning was arrested, attention focused on the contents of the duplex and on the other individuals who were there. Officer White was placed in charge of Mr. Kinzalow. Officer White escorted Mr. Kinzalow out into the front yard. The occupants of the duplex were removed from the duplex so that the search of the residence could be conducted unencumbered by the presence of the occupants. (The officers had good reason to suspect that weapons might be easily accessible by any occupant of the residence if permitted to remain inside.) At the time Mr. Kinzalow was escorted from the duplex by Officer White, he was not under arrest on the basis of any suspicion that he had committed a crime. While Mr. Kinzalow was in the front yard with Officer White, the other officers searched the duplex on the strength of the consent to search that was given by Ms. Soto shortly before or shortly after Mr. Kinzalow was escorted into the front yard.

There is a conflict in the testimony as to whether the Mr. Kinzalow was put in handcuffs by one of the first two officers through the door (which would be Officer Coniglione or Officer Walsh) while still in the duplex, or whether he was put in handcuffs out in front of the duplex by Officer Dustin White. Although the issue is close, the weight of the evidence indicates, and the court finds, per the testimony of Officer Walsh, that all three individuals who were arrested, namely

Miron Moaning, his brother Antonio Moaning (Ms. Soto's boyfriend), and Mr. Kinzalow, were handcuffed before they were taken outside. On this score, the court does not find that Officer White intentionally gave deceptive testimony. Rather, Officer White, after first testifying that he handcuffed Mr. Kinzalow after being told by Mr. Kinzalow that he, Kinzalow, had a knife on his person, was (later in his testimony) simply not certain one way or the other whether he put the defendant in handcuffs after he escorted the defendant out of the duplex into the front yard. In contrast, Officer Walsh testified with certainty that all three males were handcuffed while they were still in the duplex.

While Mr. Kinzalow was in the front yard of the duplex with Officer White, Mr. Kinzalow was not free to leave. He was being detained. While he and Officer White were in the front yard, Officer White asked Mr. Kinzalow whether he had any weapons or sharp items or drugs in his possession. Officer White asked the defendant this question for his own protection, so that he would be forewarned (i) about the presence of any weapons or sharp items which might be encountered during a pat-down search and (ii) as to the risk that the defendant might have reason to behave belligerently as a result of possession or possible use of drugs. However, at the time Officer White put this question to Mr. Kinzalow, neither Mr. Kinzalow nor anyone else had given Officer White reason to detain Mr. Kinzalow for the usual reasons that support an investigative stop – i.e., reasonable suspicion of criminal activity on Mr. Kinzalow's part. Questioning of Mr. Kinzalow while he was in the front yard, in handcuffs, was not necessary in furtherance of a protective sweep or search of the premises from which Mr. Kinzalow had been removed. Officer White had no reason to believe that, if released (or not detained in the first place) to go on about his business, Mr. Kinzalow would have done anything other than just that. *Compare,* United States v. Maddox, 388 F.3d 1356, 1365 - 66, *cert. denied* 125 S. Ct. 1689 (10th Cir. 2004).

In response to his inquiry to Mr. Kinzalow, Officer White was informed by Mr. Kinzalow that he had a knife and some marijuana in his possession. Officer White immediately removed the knife and the marijuana from the defendant's possession. The marijuana was in a baggie in a quantity sufficient to have been detectable on a pat-down search. If Officer White had not made this inquiry but had simply proceeded to conduct a pat-down search, Officer White would certainly have detected the presence of the container of marijuana and the knife.

The officers received the consent of Ms. Soto to search the residence. During this process, the officers saw some keys lying in plain view. Attached to the keys was a container that was found to contain Diazepam. The keys were identified by one of the officers as the keys to a Dodge vehicle. The key fob was found to be a remote opener which would open the doors on the Dodge pickup which was sitting in the driveway.

The Dodge pickup which was sitting in the driveway contained furniture and household goods both in the box and in the enclosed cab. Officer White testified that in the bed of the pickup were clothes, papers, boxes, and furniture. The bed of the pickup was described by Officer Coniglione as being full. The pickup was the only vehicle at this location.

After the keys were found, the defendant told the officers that the keys were his and that the truck was his. As has been noted, the defendant was put in handcuffs and detained soon after the officers first came into contact with him. The search of the duplex pursuant to Ms. Soto's consent did not occur until after the occupants had been removed from the duplex. For these reasons, the weight of the evidence establishes that the defendant was in handcuffs and was being detained when he told the officers that the Dodge keys were his and that the Dodge truck was his.

While the officers were at the duplex, Ms. Soto told Officer Walsh that she did not like Mr. Kinzalow and that she did not like Mr. Kinzalow hanging out with her boyfriend. The officers correctly perceived that Mr. Kinzalow and his truck were unwelcome at 2944 S.W. 15th Street.

The pickup was impounded for safe keeping. The officers were justifiably concerned about what might be the fate of the pickup and its contents if the pickup were left at 2944 S.W. 15th Street – a high crime area. The officers had no reason to believe that Ms. Soto would have any inclination to protect the truck or its contents. The impoundment complied with established policies of the Oklahoma City Police Department, as set forth in Government's Exhibit 1. When the officers departed this location, Antonio Moaning, Miron Moaning, and Mr. Kinzalow were all under arrest and the pickup had been impounded. The inventory search of the pickup, conducted in accordance with OCPD regulations, revealed the presence of firearms and a brick of marijuana in the cab of the truck.

Mr. Kinzalow was not given any Miranda warnings while at 2944 S.W. 15th Street.

_____

The court is concerned with the lawfulness of the detention of Mr. Kinzalow and, consequently, with the admissibility of the evidence that was garnered during, after, and as a result of that detention. On the basis of the facts as found above (which differ in some respects from the facts assumed to exist by the both the government and the defendant in their previous briefing), the government is directed to file a supplemental brief in opposition to suppression not later than October 3, 2005. The defendant is directed to respond thereto not later than October 6, 2005. (If the parties are able to agree that this case need not be tried on the October docket, this briefing schedule can and will be relaxed. If such an

agreement can be reached, the Courtroom Deputy should promptly be so notified and a new briefing schedule will be established.)

     Dated September 29, 2005.

*/s/ Stephen P. Friot*
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-122p004 (pub) .wpd