# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CR-05-122-F |
| ) | |
| BRITT EDWARD KINZALOW, ) | |
| a/k/a BRITT EDWARD KINAZLOW, ) | |
| a/k/a BRITT EDWARD KINZLOW, ) | |
| ) | |
| Defendant. ) | |

## ORDER

By this order, the court completes its consideration of the defendant's Motion to Suppress, doc. no. 27.

The facts relevant to the court's consideration of the motion are set forth at length in the court's September 29, 2005 order (doc. no. 35). The court's analysis of the motion resolves itself into the following seminal question: Should the OCPD officers, having no knowledge or suspicion of criminal conduct on the part of Mr. Kinzalow, have simply permitted Mr. Kinzalow to leave the residence where they found him, without the detention or the resultant steps in the sequence that flowed from that detention (ultimately resulting in the inventory search of the truck, which produced the marijuana and the gun), or was it reasonable, in the circumstances then at hand, to temporarily detain all of the occupants, regardless of suspicion, for the purpose of assuring that the unfolding situation had been made as secure as it could reasonably be made? Although the issue is close, the court concludes that the detention, and the subsequent searches, did not violate the defendant's Fourth Amendment rights.

One thing is certain.  The officers could have just let Mr. Kinzalow go.  Knowing what we know now, it seems highly likely that Mr. Kinzalow would have wasted no time in departing.  But, at the time a decision had to be made as to whether or not to briefly detain Mr. Kinzalow to assure unquestioned command of a potentially volatile situation, the officers had no particular reason to be confident that Mr. Kinzalow would in fact depart swiftly and without causing trouble.

The issue is made close by the fact that the warrant that was being executed was an arrest warrant, not a search warrant.  The first officers to enter the duplex quickly saw Miron Moaning and arrested him.  They could have and arguably should have left with their arrestee, with no further ado.  But Ms. Soto, who lived there, consented to a search, a circumstance which authorized the officers to remain in the duplex and to assume "unquestioned command of the situation."  Michigan v. Summers, 452 U.S. 692, 703 (1981).  *See also,* Muehler v. Mehta, 125 S.Ct. 1465 (2005).[1]  It is tempting to say that the officers should simply have permitted Mr. Kinzalow to take his leave, but they were not obligated to expose themselves to the risk that he would do something other than leave quickly and peacefully.  Michigan v. Summers, at 702 - 03.  And, "[i]nherent in Summers' authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention," Muehler at 1471, as long as the detention is not "prolonged beyond the time reasonably required to complete [the] mission."  *Id.*  at 1471, quoting Illinois v. Caballes, 125 S. Ct. 834, 837 (2005).

Once Mr. Kinzalow was lawfully detained, it was permissible to search him (Michigan v. Summers, at 704 - 05), as long as the search did not exceed the scope

---

[1] The facts would be closer yet, but perhaps still not fatal to the legality of the search (*see, e.g.*, United States v. Maddox, 388 F.3d 1356 (10th Cir. 2004), *cert. denied*, 73 USLW 3556 (2005), and United States v. Flett, 806 F.2d 823 (8th Cir. 1986)), if there had been an arrest only, unaccompanied by a search of the premises.

and intrusiveness of a Terry search, Minnesota v. Dickerson, 508 U.S. 366 (1993), and to ask him about the presence of dangerous objects on his person. New York v. Quarles, 467 U.S. 649 (1984); United States v. Lackey, 334 F.3d 1224 (10th Cir. 2003), *cert. denied,* 540 U.S. 997 (2003).

After Mr. Kinzalow was arrested as a result of the discovery of contraband on his person, the factual situation as described in the court's September 29 order clearly supported the impoundment and resulting inventory of the truck. Colorado v. Bertine, 479 U.S. 367 (1987); United States v. Tueller, 349 F.3d 1239 (10th Cir. 2003).[2]

The motion to suppress is accordingly **DENIED**.

Dated November 7, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-0122p008 (pub).wpd

---

[2] *See also,* as to impounds from private property, United States v. Sandos, 78 Fed. Appx. 706 (10th Cir. 2003), and United States v. Andas-Gallardo, 3 Fed Appx. 959 (10th Cir. 2001). United States v. Pappas, 735 F.2d 1232 (10th Cir. 1984), cited and relied upon by defendant, and involving an impound and inventory search of a vehicle parked on private property, is unpersuasive because the court, in Pappas, did not have the benefit of the Supreme Court's decision three years later in Colorado v. Bertine. Although Bertine did not involve an impoundment from private property, the Court's language in Bertine comes close to a categorical validation of inventory searches conducted pursuant to standard police department impoundment regulations where there is no showing (and there is none in the case at bar) that the impoundment and search were done in "bad faith or for the sole purpose of investigation." Bertine at 367.